[No. 22590. Department Two. March 4, 1931.]

THE STATE OF WASHINGTON, *Respondent,* v. CARL GOHN, *Appellant.*[1]

*Anderson & Richards* and *Earl W. Husted,* for appellant.

*Charles R. Denney,* for respondent.

MILLARD, J.—The defendant was charged with the offense of unlawful possession of intoxicating liquor, and of having twice before been convicted of a like offense. Answering in the negative the interrogatory, "Did the defendant own the liquor?" the jury returned a verdict of guilty as charged. From the judgment and

[1]Reported in 296 Pac. 826.

sentence pronounced upon the verdict, the defendant appeals.

Two of the buildings on appellant's farm, which is located in the south end of Snohomish county, are used as residences. One is a new house in which appellant resided. Another is an old house from which appellant removed to his present home upon its completion. The old house was, at the time of appellant's arrest, and for a long period prior to that date, rented to, and occupied by, a lone widower.

The testimony offered by the state was that, on May 18, 1929, two deputy sheriffs went to appellant's farm to search for intoxicating liquor. Upon arrival at that place, appellant was seen by one of the deputies, running from the direction of a woodshed towards a gate, with two pint bottles of moonshine whiskey in his hands. Appellant was arrested, and the two bottles of whiskey were surrendered to the officer.

Appellant's defense was that, the night before the raid, a neighbor visited his tenant in the old house, and brought with him some wine and three bottles of moonshine. The cost of that liquor was shared by the tenant and his visitor. Two other persons accepted an invitation to be present and partake of the intoxicants. That same night, upon his return from Olympia appellant learned, having gone to the tenant's house to ascertain the cause of the hilarity therein, that his tenant and his tenant's visitors were drinking. Appellant reprimanded the tenant and the guests for having intoxicating liquor on the premises. The noise subsided, whereupon the appellant went to his home and retired for the night. The tenant went to Seattle early the next morning. Two pint bottles partially filled with moonshine whiskey were left on the dining room table in the tenant's house. The same day, while the deputy sheriffs were searching the premises for

liquor, the appellant recalled the incident of the night before. He hastened to his tenant's house, and took from the table the two bottles of moonshine, his purpose being to destroy the liquor. As he was departing from the tenant's house with the two bottles of whiskey in his hands, the appellant was met by a deputy sheriff, to whom, upon the deputy's command, the two bottles were delivered.

■ It is first insisted that the court erred in overruling the demurrer to the information, which was defective, as more than one crime was charged therein. That question is not an open one in this state. It was raised in *State v. Wengren*, 156 Wash. 153, 286 Pac. 102, and decided adversely to the contention of appellant. We said:

"We have held that §§ 7338 and 7339 were enacted as amendments to the original intoxicating liquor prohibition act; that they are both parts of the same act; that the second conviction provision of § 7338 is special as to offenses therein specified and that the third provision of § 7339 is applicable to all three convictions of violation of the act. *State v. Powell*, 153 Wash. 110, 279 Pac. 573.

"Although that case involved a third conviction, the decision of this court that §§ 7338 and 7339 are amendments to the original intoxicating prohibition act decides the contention of appellant that § 7339 had been repealed, adversely.

"We have further held—which sustains the information here—that it is the duty of the prosecuting attorney to allege prior convictions even though such prior convictions could not affect the sentence to be imposed under our statute. *State v. Brames*, 154 Wash. 304, 282 Pac. 48; *State v. Thompson*, 154 Wash. 663, 283 Pac. 182."

■ Complaining of one instruction given to the jury, and of the refusal of the trial court to give to the jury four requested instructions, counsel for ap-

pellant contend that the court should have defined possession as including control of the thing possessed, with the right to dispose of it in any manner the possessor saw fit. It is argued that the liquor, with the unlawful possession of which the appellant was charged, was owned by a third party; that appellant did not know of the presence of same upon his premises until the arrival of the officers who searched his place; that appellant picked up the bottles of moonshine whiskey for the purpose of destroying same, and not for the purpose of exercising ownership or possession thereof; that evidence was adduced, reasonably raising a defensive issue, therefore the appellant was entitled to instructions affirmatively presenting such issue.

Appellant relies for reversal upon *State v. Bostock,* 147 Wash. 402, 266 Pac. 173, and *State v. Jones,* 114 Wash. 144, 194 Pac. 585. In the latter case, we said that "possession," as used in the statute defining the offense of unlawful possession of intoxicating liquor,

" . . . means something more than the mere taking in the hand for the purpose of immediately drinking the thing thus possessed upon the express invitation of the owner so to do. . . . and the court should at least have defined possession as including control of the thing possessed with the right to dispose of it in any manner the possessor saw fit."

We did not there hold, nor have we ever held, that, when premises are searched for intoxicating liquors, any person present upon those premises would be absolved of guilt of unlawful possession, if he hastened to some point on that property, where he knew or suspected intoxicants were located, and destroyed the contraband to defeat the officers in their search.

In *State v. Harris,* 135 Wash. 446, 237 Pac. 1005, when the house in which the appellant was a visitor

was raided, the appellant picked up from a table in the house a bottle of liquor, which he claimed he had never seen before. He testified that he did not know, when he picked it up, what it contained; that he picked it up and started to empty it, because he thought that "if it should happen to be liquor" he "did not want to see the officers get it." We said:

"Ownership was shown to be in a person not then present, but whether the parties involved were there with the owner's consent or were mere trespassers, the evidence is silent.

"The appellant relies for reversal on the case of *State v. Jones,* 114 Wash. 144, 194 Pac. 585. We cannot think the case in point. There the only act shown by the person found guilty of possession was that he, while visiting at a friend's house, took and drank a glass of intoxicating liquor handed him by his host. It was said that this was not such a possession as the statute contemplates; that it was not the intention of the law 'to make a criminal of every person who might partake of a friend's hospitality.' But we think we need not question the soundness of that case in order to sustain the conviction in this one."

It was necessary for the state to prove beyond a reasonable doubt that the liquor in question was under the control, or in the custody, of the defendant. The fact that it was not owned by him is immaterial. That he had knowledge, or at least he suspected, that the intoxicating liquor was in his tenant's house, is clear from the evidence. His story of what happened the previous night was plausible, but was not believed by the jury. By their verdict, we are bound.

Upon the trial, it was shown that appellant had been twice previously convicted of the offense of unlawful possession of liquor. That fact was not, of itself, evidence that appellant was guilty of the same offense a third time. However, it was a circumstance affecting his credibility, and may have caused the jury to dis-

believe his narration as to the tenant's possession of the liquor, the appellant's lack of knowledge of such unlawful use of his premises, etc. Doubtless, the jury believed, in view of appellant's record, that the tenant's house was where the liquor was cached.

That the appellant was in conscious and substantial possession of the liquor found upon his premises under his control, may be lawfully inferred from all of the facts and circumstances in the case. There was sufficient evidence in the case to establish prima facie possession by the appellant of the liquor in question. There was sufficient evidence that intoxicating liquor was in the possession of the appellant. The presumption logically follows that such liquor was unlawfully acquired and possessed by the appellant, and the burden of showing the contrary is upon him. When exculpatory facts are shown, the court should give to the jury a requested instruction to that effect.

From the foregoing it is clear that appellant's requested instructions, all of which go to the right of the appellant to have possession of liquor for the purpose of destroying it, so that officers searching for same may not find it, reading as follows, were correctly refused.

"No. 3. You are instructed that the term 'possession' as herein used means something more than the mere taking in the hands for the purpose of immediately destroying when about to be discovered by peace officers."

"No. 7. You are further instructed that in case you find Carl Gohn, defendant herein, was not the owner of the intoxicating liquor in question, and that he merely took the liquor in his hands for the purpose of destroying the same, is not possession within the purview of the statute and it would be your duty to acquit the defendant."

"No. 9. You are further instructed that if you believe from the evidence that said defendant, Carl Gohn,

on or about the 18th day of May, 1929, did not have any previous knowledge that said intoxicating liquor, if it is a fact, was on his premises, and that after the officers arrived and were searching his premises that said defendant went to the premises of Joe Fasbind and found two bottles of intoxicating liquor at said place and was taking said liquor for the purpose of carrying it off of his place and destroying said liquor, then in that event you should find the defendant not guilty as charged, otherwise guilty.''

''No. 11. You are instructed that possession of intoxicating liquor may be either actual or constructive. Actual possession exists when the property is in the individual occupancy of the party or his agent, and is frequently expressed as 'possession in fact.' Constructive possession is that possession which the law annexes to the legal title or ownership of property, and where there is a right to the immediate actual possession of said property.''

As stated above, one who, with knowledge of the location of intoxicants upon his premises, which were being searched therefor by peace officers, goes to that cache or location, obtains and attempts to destroy the liquor in such place, is exercising a control that constitutes ''possession.''

The instructions are not complete. They do not state the law applicable to the facts. So, too, appellant endeavors to emphasize the fact of ownership of intoxicants. We have repeatedly held that ownership of the intoxicants is unimportant. Did the appellant have control or dominion of the contraband, with knowledge of the facts? If so, he had ''possession'' under the statute.

The requested instructions, being in part incorrect, may be refused as a whole.

''By several announcements of this court, the law is fixed that it is not error to refuse to instruct the jury as requested when the instruction is partially erroneous; that is, there is no obligation upon the

184

court to segregate the correct and incorrect portions of a requested instruction and then submit the correct portion to the jury. A requested instruction which is in part correct and in part incorrect should be refused as a whole." *Fehler v. Montesano,* 110 Wash. 143, 188 Pac. 5.

"It is also well settled that, in order to entitle a party to predicate error upon the refusal of the court to give a requested instruction, such instruction must be substantially correct and such as the court might give to the jury without modification or omission. A party cannot complain that the court did not pause in the midst of a trial and, of its own motion, modify and correct a requested instruction and then give it as corrected. No such duty rests upon the court. An instruction which is in part correct and in other particulars incorrect may be refused as a whole." *Nollmeyer v. Tacoma R. & Power Co.,* 95 Wash. 595, 164 Pac. 229.

█ Appellant's exception to the instruction given by the court, is not sufficient ground for a new trial. While the instruction does not fully and definitely state the issues, appellant did not request specific instructions appropriate to the evidence, therefore the instructions requested by the appellant were properly refused, as stated above.

The rule announced by Mr. Thompson (Thompson, Trials, § 2341) we quoted with approval in *State v. Parsons,* 44 Wash. 299, 87 Pac. 349, 120 Am. St. 1003, 7 L. R. A. (N. S.) 566:

"Mere nondirection, partial or total, is not ground of new trial, unless specific instructions, good in point of law and appropriate to the evidence, were requested and refused. A party cannot, by merely excepting to a charge, make it the foundation for an assignment of error, that it is indefinite or incomplete."

If appellant knowingly permitted his tenant to use the old house for the illegal purpose of keeping intoxicating liquors therein, and if the appellant knew

that the liquor was in the tenant's house (there is evidence warranting the jury to so conclude), and the appellant hastened to that house, obtained the liquor, and exercised control over same for the purpose of destroying the contraband to prevent the officers from securing it, he was guilty of unlawful possession of intoxicating liquor.

The judgment is affirmed.

BEELER, FULLERTON, and BEALS, JJ., concur.

TOLMAN, C. J., dissents.