# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE OF WASHINGTON, )
                 )   No. 69003-5-I
         Respondent, )   (consolidated with No. 69700-5-I)
                 )
       v.             )   ORDER GRANTING MOTION
                 )   TO PUBLISH
MICHAEL T. PIGOTT, )
B.D. 06/12/94, )
                 )
          Appellant. )

The respondent, State of Washington, has filed a motion to publish herein. The court has taken the matter under consideration and has determined that the motion should be granted.

Now, therefore, it is hereby

ORDERED that the motion to publish the opinion filed in the above-entitled matter on March 31, 2014, is granted. The opinion shall be published and printed in the Washington Appellate Reports. It is further

ORDERED that appellant's request for use of initials in the opinion is denied.

Done this 21ˢᵗ day of _May_, 2014.

FOR THE COURT:

_Spearman, J.P.T._

2014 MAY 21 PM 4:26

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 69003-5-I |
| Respondent, | ) | (consolidated with No. 69700-5-I) |
| | ) | |
| v. | ) | DIVISION ONE |
| | ) | |
| | ) | PUBLISHED OPINION |
| MICHAEL T. PIGOTT, | ) | |
| B.D. 06/12/94, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 31, 2014 |

GROSSE, J. — A Frye[1] hearing is not required where there is no evidence involving new methods of proof or new scientific principles. Here, the fingerprint identification method used by the police is generally accepted within the scientific community. The trial court did not err in not conducting a Frye hearing and admitting the evidence. Affirmed.

Michael Pigott was charged and found guilty in juvenile court of two counts of residential burglary. In both homes, detectives discovered latent fingerprints which were identified as belonging to Pigott. Prior to trial, Pigott requested a Frye hearing, arguing that fingerprint identification is no longer generally accepted in the scientific community. The trial court denied the motion. After trial, the court found Pigott guilty and imposed the standard range disposition on each count. Pigott appeals arguing that the trial court improperly denied his motion for a Frye hearing.

---

[1] Frye v. United States, 293 F. 1013 (D.C. Cir. 1923).

We review de novo a trial court's decision whether to hold a Frye hearing.[2] In determining the admissibility of evidence based on novel scientific theories or methods, Washington courts employ the "general acceptance" standard set forth in Frye v. United States.[3] Under Frye, novel scientific evidence is admissible if it is based on a theory or principle which is generally accepted in the relevant scientific community, but not admissible if qualified experts have significant disputes as to its validity.[4] Evidence not involving new methods of proof or new scientific principles is not subject to examination under Frye.[5]

Washington has a long history of admitting fingerprint identification evidence.[6] Here, the fingerprint experts examined the latent prints, compared them to Pigott's known print, and made an evaluation. The results were verified. The State's expert witnesses did not rely on novel or unusual scientific techniques in reaching their opinions. The evidence presented clearly demonstrated that this specific method is commonly used and generally accepted by the fingerprint analysts. Once the scientific community accepts a methodology, application of the methodology to a particular case is a matter of weight and admissibility under ER 702, which allows a qualified expert witness to testify if scientific, technical, or other specialized knowledge will assist the trier of fact.[7]

---

[2] State v. Gregory, 158 Wn.2d 759, 830, 147 P.3d 1201 (2006).
[3] 293 F. 1013, 1014 (D.C. Cir. 1923); State v. Copeland, 130 Wn.2d 244, 255, 922 P.2d 1304 (1996).
[4] State v. Hayden, 90 Wn. App. 100, 103-04, 950 P.2d 1024 (1998).
[5] State v. Baity, 140 Wn.2d 1, 10, 991 P.2d 1151 (2000).
[6] See State v. Johnson, 194 Wash. 438, 442, 78 P.2d 562 (1938); State v. Witzell, 175 Wash. 146, 26 P.2d 1049 (1933).
[7] Gregory, 158 Wn.2d at 829-30; State v. Russell, 125 Wn.2d 24, 41, 882 P.2d 747 (1994).

Pigott argues that new evidence raises questions as to the continued general acceptance of the ACE-V technique used here to analyze fingerprints. ACE-V is an acronym for "analysis, comparison, evaluation, and verification."[8] The ACE-V component was succinctly described by the Third Circuit in United States v. Mitchell:[9]

> The basic steps taken by an examiner under this protocol are first to winnow the field of candidate matching prints by using Level 1 detail to classify the latent print. Next, the examiner will analyze the latent print to identify Level 2 detail (i.e., Galton points and their spatial relationship to one another), along with any Level 3 detail that can be gleaned from the print. The examiner then compares this to the Level 2 and Level 3 detail of a candidate full-rolled print (sometimes taken from a database of fingerprints, sometimes taken from a suspect in custody), and evaluates whether there is sufficient similarity to declare a match.

Once a second examiner confirms the conclusion of the first examiner, it is verified. The expert witnesses used generally accepted methods in analyzing Pigott's fingerprints. Thus, the methods were not "novel," and did not require a Frye hearing. Because such methodology is generally accepted in the scientific community, the evidence was properly admitted.

Pigott relies on a high profile misidentification of Brandon Mayfield made by the Federal Bureau of Investigations in its investigation into the terrorist bombing of a train in Madrid, Spain. As a result of this misidentification, the Office of the Inspector General (OIG) initiated an investigation of the Mayfield case. Citing to the OIG report, Lyn Haber, Ph.D. and Ralph Haber, Ph.D. argue that fingerprinting is not an exact science. In support of their theory, the Habers cite to a 2009 report by the National Research Council of the National Academy of Sciences, which recommended additional testing to

---

[8] United States v. Mitchell, 365 F.2d 215, 221 (3rd Cir. 2004).
[9] 365 F.2d 215, 221 (3rd Cir. 2004)

determine the reliability of latent fingerprint analysis generally and of the ACE-V methodology in particular.[10]

However, the reliability of fingerprint identification has been tested in our adversarial system for over a century and routinely subjected to peer review.[11] The trial court considered all of this in reaching its conclusion that a Frye hearing was not needed. The trial court expressly found that the identification analysis is accepted in the relevant scientific community.[12] Once the evidence is accepted as scientifically acceptable, the question of admissibility turns on whether the witnesses qualify as experts and whether the proffered testimony would be helpful to the trier of fact. Under the circumstances here, the trial court did not err in admitting the evidence under ER 702. Any objections that Pigott had to the fingerprint analysis addressed the weight of the testimony, not its admissibility. The trial court did not err.

Affirmed.

WE CONCUR:

---

[10] See National Research Council of the National Academy of Sciences, Strengthening Forensic Science in the United States: A Path Forward, at 143-44 (2009), https://www.ncjrs.gov/pdffiles1/nij/grants/228091.pdf; see also United States v. Rose, 672 F. Supp. 2d 723, 725-26 (fingerprint evidence sufficiently reliable to be admitted under Fed. R. Evid. 702 and holding the Habers' criticism of the ACE-V methodology insufficient to even warrant holding a hearing to determine whether fingerprint analysis is admissible scientific evidence).

[11] People v. Jennings, 252 Ill. 534, 549, 96 N.E. 1077 (1911); State v. Johnson, 194 Wash. 438, 442, 78 P.2d 562 (1938); United States v. John, 597 F.3d 263, 274-75 (5th Cir. 2010); United States v. Plaza, 188 F. Supp. 2d 549 (2002).

[12] See also Hayden, 90 Wn. App. 100 (digitally enhanced latent fingerprints and palm prints found admissible under Frye).