IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39574-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NATHAN O. BEAL, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Nathan Beal appeals his conviction for first degree murder, arguing the trial court abused its discretion by admitting ballistics comparison testimony without first conducting a *Frye*[1] hearing. He also challenges the trial court's imposition of a $500 crime victim penalty assessment. We reject Mr. Beal's challenge to his conviction, but agree to strike the penalty assessment.

---

[1] *Frye v. United States*, 54 App. D.C. 46, 293 F. 1013 (1923).

FACTS

On the morning of April 3, 2020, police responded to a report of a dead body found in an alleyway in downtown Spokane. The decedent was identified as Andrew Bull, a homeless man who had lived nearby. Mr. Bull had been shot one time in the head. Police recovered a single Winchester 9mm luger shell casing and a 9mm bullet from the alley. Surveillance footage identified a suspect walking into and out of the alley, but police were unable to identify the suspect from the video. However, they were able to see that the suspect walked with a "distinct[ive]" "duck walk" where it "appeared his left foot was a little bit further canted out." 1 Rep. of Proc. (RP) (Jan. 25, 2023) at 371.

Months later, police were searching Nathan Beal's apartment on a separate matter[2] and located a 9mm Ruger semiautomatic pistol and Winchester 9mm luger ammunition. When questioned, Mr. Beal denied owning a firearm. The police observed Mr. Beal's gait was similar to the suspect captured on the surveillance video, including the same "duck walk with the left foot pointed out a little bit further." *Id*. at 388.

A subsequent search of Mr. Beal's mobile phone revealed he had searched the terms "'Murder Spokane,'" "'Spokane murder rate,'" and "'Spokane homicide rate'"

---

[2] This involved the murder of Mr. Beal's ex-wife. Mr. Beal was convicted of the murder of his ex-wife in a trial that predated the current proceedings. During the current proceedings, the trial judge excluded evidence referencing the murder of Mr. Beal's wife.

during May and July 2020. It was later discovered that the firearm found in Mr. Beal's

apartment was registered to Christina Brewer. She had previously dated Mr. Beal, and

explained she bought the firearm for him with his money, but that he insisted she register

the firearm under her name.

Mr. Beal's latent fingerprint and DNA were located on the firearm. A forensic

scientist named Brett Bromberg-Martin conducted a ballistics comparison analysis of

the bullet and shell casing recovered from the crime scene and compared them with

ammunition test-fired from Mr. Beal's gun. Mr. Bromberg-Martin opined that the bullet

and shell casing found at the scene had been fired from Mr. Beal's gun. His analysis was

confirmed by an independent peer review.

The State charged Mr. Beal with first degree murder. Pretrial, Mr. Beal moved to

exclude the State's ballistics testimony or, in the alternative, requested a *Frye* hearing to

determine its admissibility. The entirety of Mr. Beal's motion read as follows:

> **12. Motion to prohibit expert testimony regarding a ballistics match, or in the alternative for a <u>Frye</u> hearing to be held.**
>
> The <u>Frye</u> test is used to determine the admissibility of expert opinions and scientific evidence. Even though the test is no longer used in federal courts it continues to retain vitality and applicability in Washington. *State v. Cauthron*, 120 Wn.2d 879, 886, 846 P.2d 502 (1993); *State v. Riker*, 123 Wn.2d 351, 869 P.2d 43 (1994); *State v. Copeland*, 130 Wn.2d 244, 922 P.2d 1304 (1996). The <u>Frye</u> test is a threshold inquiry to be considered in determine [sic] the admissibility of evidence under ER 702.

3

> *State v. Riker*, 123 Wn.2d at 360 footnote 1.
>
> The Frye test requires that for an expert opinion to be admissible, the court must find that the scientific principles and methodology from which the opinion is derived are generally accepted in the relevant scientific community. Id. at 359. "The core concern of Frye is only whether the evidence being offered is based on established scientific methodology, both an accepted theory and a valid technique for implementing that theory" *State v. Cauthorn*, 120 Wn.2d at 887. The reason the Frye test is utilized is because jurors are often so "mesmerized" by scientific principles and experts, they are more susceptible to being confused, misled, or unduly prejudiced by scientific than by other types of evidence.
>
> In this case, The State seeks to introduce expert testimony at trial from Washington State Patrol's firearms examiner, Brett Bromberg-Martin. He examined the casings and bullets found in this case and compared them to the firearm that was found in Mr. Beal's apartment. In his report, he concluded that the casings and bullets matched the firearm that was found in Mr. Beal's residence. Defense challenges the expert opinion that they were unquestionably fired from the same firearm and that they can be excluded from *all* other firearms.

Clerk's Papers (CP) at 27-28. The State countered Mr. Beal's motion by noting Division One of this court had recognized the admissibility of ballistics comparison testimony under *Frye* in *State v. DeJesus*, 7 Wn. App. 2d 849, 436 P.3d 834 (2019).

When arguing Mr. Beal's motion in limine to the court, defense counsel indicated she had included the motion "[f]or appeal purposes." 1 RP (Jan. 19, 2023) at 54. She elaborated on her written motion as follows, "There are some defense attorneys in the state of Washington, I've noticed, that have been trying to bring these motions. Because they are subjective tests, that's really the nature of it. And so I would ask the Court to

4

grant the motion in limine." 1 RP (Jan. 23, 2023) at 102. Defense counsel did not

make any further arguments and never requested specific wording regarding ballistics

testimony. The trial court denied Mr. Beal's motion in limine and request for a *Frye*

hearing on the basis of *DeJesus*.

The case proceeded to trial. At trial, Mr. Bromberg-Martin testified that, pursuant

to his ballistics analysis, the shell casing and bullet found at the murder scene were

"identified as being fired by that Ruger pistol" found in Mr. Beal's apartment. 2 RP

(Jan. 25, 2023) at 536. On cross-examination, Mr. Bromberg-Martin conceded that his

conclusions were "subjective" based on his "professional opinion." *Id.* at 440. On re-

direct, the prosecutor asked Mr. Bromberg-Martin if there was "any doubt" in his mind

regarding his opinion. *Id.* at 545. Mr. Bromberg-Martin responded, "I would only put a

conclusion in the lab report if I was confident about my conclusions and also if my

various reviewers agreed with that as well." *Id.* at 545-46.

In explaining the basis for his testimony, Mr. Bromberg-Martin testified that Ruger

pistols have been subject to a substantial amount of forensic study. He cited a controlled

study from 2020 that showed ballistics identifications of Ruger pistols had an "extremely

low error rate." *Id.* at 556.

The jury convicted Mr. Beal of first degree murder with a firearm enhancement. At sentencing, the trial court found Mr. Beal to be indigent, sentenced him to 421 months' confinement, and imposed a $500 crime victim penalty assessment (VPA).

Mr. Beal now appeals his conviction and sentence.

ANALYSIS

Frye *hearing*

Mr. Beal asserts the trial court erred in admitting Mr. Bromberg-Martin's expert testimony. Specifically, he claims that ballistic identification evidence does not meet the *Frye* test for admissibility of novel scientific theories. *Frye v. United States*, 54 App. D.C. 46, 47, 293 F. 1013 (1923).

A trial court's decision on whether to admit evidence under *Frye* is reviewed de novo. *State v. Gregory*, 158 Wn.2d 759, 830, 147 P.3d 1201 (2006). The *Frye* test involves assessing the admissibility of novel scientific evidence. "Evidence not involving new methods of proof or new scientific principles is not subject to examination under *Frye*." *State v. Pigott*, 181 Wn. App. 247, 249, 325 P.3d 247 (2014).

Division One's 2019 decision in *DeJesus* held that ballistic identification testimony meets *Frye*'s general acceptance test. 7 Wn. App. 2d at 865. Mr. Beal has not identified any subsequent authorities disagreeing with *DeJesus* or new methods of

6

analysis that might undermine the analysis set forth in that decision. Nor has Mr. Beal

pointed to case law from anywhere in the country excluding ballistic identification

testimony under the *Frye* standard. Given this record, the trial court appropriately

overruled Mr. Beal's objection to the ballistics testimony without first holding a

*Frye* hearing.

On appeal, Mr. Beal appears to argue that regardless of the general acceptance of

ballistics evidence, Mr. Bromberg-Martin should not have been allowed to testify that the

bullet and casing obtained from the crime scene matched the gun found at Mr. Beal's

house. This argument goes to the form of Mr. Bromberg-Martin's opinion testimony, not

the general acceptance of ballistics identification methodology as contemplated by *Frye*.

*See State v. Green*, 182 Wn. App. 133, 149, 328 P.3d 988 (2014).

Mr. Beal never preserved an objection to the form of Mr. Bromberg-Martin's

testimony. Mr. Beal could have argued that Mr. Bromberg-Martin should have been

precluded from stating his testimony in unqualified terms. *See Williams v. United States*,

210 A.3d 734, 742 (D.C. 2019) (Regardless of general admissibility of ballistic

identification testimony, "empirical foundation does not currently exist to permit [ballistic

identification] examiners to opine with certainty that a specific bullet can be matched to a

7

specific gun.").[3] If Mr. Beal had made this argument, the trial court might have limited

the scope of the testimony. But the trial court was never afforded the opportunity to assess

concerns regarding the form of Mr. Bromberg-Martin's opinion testimony. We will not

assess this issue for the first time on appeal. *See* RAP 2.5(a).

VPA

Mr. Beal contends we should remand with instructions to strike the VPA from his

judgment and sentence. The State concurs.

Former RCW 7.68.035(1)(a) (2018) required a VPA be imposed on any individual

found guilty of a crime in superior court. In April 2023, the legislature amended this

statute to prohibit the imposition of the assessment on indigent defendants. The statutory

amendments took effect on July 1, 2023. The amended statute applies prospectively to

cases pending on direct appeal that are not yet final. *State v. Ellis*, 27 Wn. App. 2d 1, 16,

530 P.3d 1048 (2023).

Mr. Beal is indigent. The VPA must therefore be struck from his judgment and

sentence. Resentencing is not required.

---

[3] *Williams* was decided in the context of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), which governs the test for admissibility of expert testimony in federal court. Washington courts have not adopted *Daubert*'s reliability test. Nevertheless, insights from cases decided under *Daubert* may be relevant to assessing the proper scope of expert testimony under ER 702 and 403.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

Mr. Beal brings two additional claims in a pro se statement of additional grounds for review. First, he contends a *Brady*[4] violation occurred where the ballistics pictures that show the marks on the cartridge from the crime scene did not match those from the gun found in his apartment were never provided to the defense. Second, he argues that he does not have a particular walk or gait and, therefore, the trial court should not have admitted testimony on this issue.

The record fails to support Mr. Beal's *Brady* argument. Mr. Beal never raised a *Brady* issue during the trial court proceedings. He complains about photographs included in the State's PowerPoint presentation, but those photographs are not part of the record on review. If Mr. Beal has admissible evidence showing a *Brady* violation, he can seek relief through a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Mr. Beal failed to preserve an objection to testimony regarding his gait in the trial court. We therefore will not engage in appellate review of this claim. *See* RAP 2.5(a).

As part of his argument regarding his gait, Mr. Beal seems to contend that the trial court should have admitted other suspect evidence regarding his neighbor who had a

---

[4] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

9

similar gait.

Other suspect evidence will be admissible at trial if it is relevant and not overly

prejudicial. *State v. Franklin*, 180 Wn.2d 371, 378-79, 325 P.3d 159 (2014). Relevance is

established if proffered evidence tends to connect someone other than the defendant with

the crime. *Id*. Mere speculation does not meet this standard. *State v. Thomas*, 150 Wn.2d

821, 857, 83 P.3d 970 (2004). A trial court's decision to exclude other suspect evidence is

reviewed for abuse of discretion. *Id*. at 856.

Here, the fact that Mr. Beal's neighbor purportedly had a gait similar to the

individual depicted in the surveillance video was too speculative to support the admission

of other suspect evidence. Unlike what was true of Mr. Beal, there was no other evidence

connecting the neighbor to Mr. Bull's murder. Furthermore, the State presented evidence

that it ruled out Mr. Beal's neighbor because it had connected Mr. Beal to Mr. Bull's

murder through evidence gathered during its investigation of the murder of Mr. Beal's

ex-wife. If Mr. Beal had introduced evidence regarding his neighbor, it would have

opened the door to extremely prejudicial evidence regarding Mr. Beal's conviction for the

murder of his ex-wife. The trial court did not abuse its discretion in excluding the other

suspect evidence.

No. 39574-0-III
*State v. Beal*

CONCLUSION

The judgment of conviction is affirmed. This matter is remanded for the limited purpose of striking the VPA from Mr. Beal's judgment and sentence. Resentencing is not required.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Staab, J.

11